**SUM-100**

# SUMMONS
## (CITACIÓN JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ALAMEDA COUNTY AGRICULTURAL FAIR ASSOCIATION, a California non-profit corporation; the COUNTY OF ALAMEDA, a government entity; and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CALIFORNIA SOUL FOOD COOKOUT AND FESTIVAL INC., a California corporation

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
**05/26/2023**
Chad Finke, Executive Officer / Clerk of the Court
By: S. Ashby-Anderson, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda County Superior Court

Hayward Hall of Justice
24405 Amador Street, Hayward, CA 94544

**CASE NUMBER:**
*(Número del Caso):* 23CV034510

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sean J. Lowe, 5317 S Mullen Ave, Los Angeles, CA 90043; Telephone: (424) 243-5020

DATE: 05/26/2023
*(Fecha)* Chad Finke, Executive Officer / Clerk of the Court

Clerk, by S. Ashby-Anderson , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* THE COUNTY OF ALAMEDA, a government entity

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP 416.50 (public entity)

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

**EXHIBIT 1**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

---

*Handwritten/stamped annotations:* Daniel Gonzalez; CLERK & BOARD OF SUPERVISORS — RECEIVED MAY 31 2023; 2023-54

FLOWE LEGAL, P.C.
Sean Lowe (Bar No. 295653)
Sean@Flowe.Biz
5317 S Mullen Ave
Los Angeles, CA 90043
Telephone: (424) 243-5020

RECEIVED
MAY 31 2023
CLERK & BOARD
OF SUPERVISORS

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
05/30/2023 at 09:55:27 AM
By: Steven Ashby-Anderson,
Deputy Clerk

Attorneys for Plaintiff
CALIFORNIA SOUL FOOD COOKOUT AND FESTIVAL INC.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF ALAMEDA

CALIFORNIA SOUL FOOD COOKOUT AND FESTIVAL INC., a California corporation,

Plaintiff,

v.

ALAMEDA COUNTY AGRICULTURAL FAIR ASSOCIATION, a California non-profit corporation; the COUNTY OF ALAMEDA, a government entity; and DOES 1-20,

Defendants.

Case No. 23CV034510

**COMPLAINT FOR DAMAGES:**
1. **BREACH OF CONTRACT**
2. **NEGLIGENT MISREPRESENTATION**
3. **BREACH OF CONTRACT**
4. **42 U.S.C. § 1983 (FREE SPEECH)**
5. **42 U.S.C. § 1983 (RETALIATION FOR EXERCISING FREE SPEECH)**
6. **42 U.S.C. § 1983 (DUE PROCESS)**
7. **42 U.S.C. § 1983 (EQUAL PROTECTION)**

**JURY TRIAL DEMAND**

EXHIBIT 1   Case No.   COMPLAINT

The plaintiff California Soul Food Cookout and Festival Inc. (the "Soul Food Festival") for its complaint against the defendants Alameda County Agricultural Fair Association, the County of Alameda, and Does 1-20 (collectively, the "ACF" or the "Defendants"), alleges upon personal knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF THE ACTION

1. This case began with a contract between the Soul Food Festival and the ACF to host a two-day entertainment festival on about September 17-18, 2022 (the "September Festival"). The September Festival was unique in that it catered to a wide diversity of people.

2. The September Festival's events would occur in the amphitheater at the Alameda County Fairgrounds, as well as the surrounding grounds.

3. In April 2022, the Soul Food Festival and the ACF entered into a letter of intent to "work in good faith" towards a multi-year agreement to host future events.

4. Prior to the September Festival, the ACF, on at least two occasions, provided the Soul Food Festival with a seating chart for the amphitheater. That seating chart incorrectly included four sections in the front of the amphitheater, sections F1-F4, which did not exist (the "Non-Existent Sections"), as well as space for VIP seating, which also did not exist at all relevant times.

5. The Non-Existent Sections represented the best seats in the amphitheater.

6. The ACF also provided its approved ticket vendor, Saffire, with the same incorrect seating chart for the amphitheater.

7. Using that incorrect seating chart, the Soul Food Festival sold tickets in Non-Existent Sections of the amphitheater.

8. Meanwhile, the Soul Food Festival contracted with the ACF for the security for the September Festival, as required by its contract with the ACF.

9. The Alameda County Fairgrounds even raised the prices for security for the September Festival a few months before, claiming price increases were necessary

1

EXHIBIT 1    Case No.    COMPLAINT

to ensure that the security personnel were professional and adequate.

10.    In the days leading up to day one of the September Festival, Soul Food Festival personnel discovered a lack of security and organization at the Alameda County Fairgrounds.  At that time, the Soul Food Festival's requests for the security it contracted for, and the ACF required, went unfulfilled.

11.    Then, on the first day of the September Festival, guests arrived to discover that the seats they had purchased in the Non-Existent Sections, which were supposed to be the best seats in the entire amphitheater, did not exist.

12.    That confusion led those guests to sit in the next-closest sections to the stage, Sections A-D, which were seats purchased by others.

13.    This caused a domino effect, pushing others from their seats all the way to the back of the reserved seating sections.

14.    Unsurprisingly, it created a stressful scene, where people were upset to find others sitting in their seats who would not move.

15.    This confusion was amplified by the lack of security personnel provided by the ACF.

16.    This lack of security was apparently caused by three problems: (1) the ACF did not provide the number of security personnel requested by the Soul Food Festival and that the ACF had repeatedly determined was necessary to secure the September Festival; (2) the security personnel provided were often young, inexperienced, and ineffective; and (3) some security personnel left the amphitheater, including by taking off their uniforms and leaving the venue's surrounding grounds.

17.    That meant that when a guest sought security so that they could sit in the seat they paid for, there was no security personnel able and willing to ensure that guest could sit in their purchased seat.

18.    The lack of security also left venue gates unguarded, with guest's bags going unsearched, so guests without tickets, or guests with unauthorized items, could enter the venue.

2

EXHIBIT 1    Case No.    COMPLAINT

19. That added to the turmoil, as guests without tickets entered the venue and took the seats of those guests who had purchased tickets to the September Festival.

20. A few guests were also able to bring weapons into the September Festival due to the security lapses, including at least one firearm.

21. That confusion, and the lack of security personnel present, caused the Soul Food Festival to redirect its own personnel to try and help everyone find a seat.

22. It also meant that the Soul Food Festival could not sell any of its food or merchandise, because all of its personnel were trying to fill in for the lack of security that was not provided by the ACF.

23. All of the food and merchandise meant for sale at the September Festival by the Soul Food Festival thus went unsold. Consequently, the Soul Food Festival sustained significant losses when it was unable to sell its food or merchandise.

24. The ACF failed to fulfill its obligations in providing security for the September Festival.

25. Even the ACF's invoice for security for the September Festival shows that it did not provide the number of security personnel requested by the Soul Food Festival, which the ACF agreed to provide and which the ACF found was necessary for security.

26. Moreover, during the September Festival personnel from the ACF demanded that the Soul Food Festival remove comedian Mario Hodge from performing any further.

27. Personnel from the ACF stated that ACF leadership, including Does 1-20, directed the ACF to prohibit Mario Hodge from performing further during the September Festival due to his profanity and discussion of adult subjects.

28. ACF personnel stated that the ACF felt Hodge's comedy made neighbors and important guests uncomfortable.

29. ACF personnel also stated that the Soul Food Festival would not be permitted back at the Alameda County Fairgrounds if they did not remove Hodge

3

EXHIBIT 1   Case No.   COMPLAINT

from any further comedy performances during the September Festival.

30. In short, the ACF prohibited the Soul Food Festival from letting Hodge give further comedic performances during the September Festival because they disagreed with the content of his comedy.

31. The Soul Food Festival complied and removed Hodge from any further performances on the first day and the second day of the September Festival, because it feared the loss of a multi-year contract for future festivals at the Alameda County Fairgrounds.

32. After the September Festival, personnel from the ACF apologized to the Soul Food Festival for its failure to provide the security personnel that the Soul Food Festival ordered.

33. Despite providing the wrong seating chart and inadequate security personnel, the ACF now disclaims any responsibility for the confusion and damages caused.

34. The ACF also refuses to take responsibility for its First Amendment violations in preventing Hodge from continuing to perform at the September Festival.

35. Additionally, the ACF, without consulting the Soul Food Festival, informed the Soul Food Festival that it would no longer execute a multi-year agreement for future events hosted by the Soul Food Festival at its venue, despite a previous agreement to act in good faith towards reaching a multi-year contract.

36. As discussed in more detail below, the Soul Food Festival has been irreparably damaged as a direct result of the actions of the ACF, and it has initiated legal action to recover the business losses it has suffered and will continue to suffer, as well as the losses from the ACF's violation of its constitutional rights.

## THE PARTIES

37. The Soul Food Festival is a California corporation with its principal place of business in Alameda County, California.

38. The Alameda County Agricultural Fair Association is a non-profit

4

EXHIBIT 1   Case No.   COMPLAINT

California corporation with its principal place of business in Alameda County, California.

39. The County of Alameda is a governmental entity.

40. The Soul Food Festival is unaware of the true names or capacities, whether individual, corporate, associate or otherwise of the defendants sued herein as DOES 1 through 20, and therefore, sues these defendants by such fictitious names. The Soul Food Festival will amend this Complaint to allege their true names and capacities when they are ascertained. Each of the fictitiously named defendants are responsible in some manner for the occurrences herein alleged, and the Soul Food Festival's damages as herein alleged were proximately caused by the acts and/or omissions of said fictitiously name defendants.

41. At all times herein mentioned each of the Defendants, including Does 1-20, was the agent, either actual or ostensible, and employee of each of the remaining Defendants, and in doing the things herein alleged, was acting within the purpose and scope of such agency and employment and with the advance knowledge, authorization or ratification of each of the remaining Defendants and at least one of the officers, directors or managing agents of each of the Defendants.

42. In particular, Does 1-20 were individuals, acting within the course and scope of their employment as employees or officers of the defendants Alameda County Agricultural Fair Association and/ or the County of Alameda, and were authorized by the defendants Alameda County Agricultural Fair Association and/ or the County of Alameda to perform the duties and responsibilities of an employee or officer of and for the defendants Alameda County Agricultural Fair Association and/ or the County of Alameda, and all acts hereinafter complained of were performed by them within the course and scope of their duties as employees and officials.

## JURISDICTION AND VENUE

43. The Court has unlimited civil jurisdiction of this action because the amount in controversy exceeds $25,000, exclusive of interest and costs.

5

EXHIBIT 1   Case No.   COMPLAINT

44. Jurisdiction over the Alameda County Fairgrounds is proper since the Alameda County Fairgrounds is a resident of Alameda County, and it is doing business in Alameda County.

45. Venue is proper in Alameda County because the Alameda County Fairgrounds resides in Alameda County, and a substantial part of the events giving rise to this action occurred in Alameda County, among other reasons.

## FACTUAL ALLEGATIONS

### A. The Relevant Parties.

46. The Soul Food Festival, an entertainment company, was created to host events like the September Festival.

47. The Alameda County Agricultural Fair Association is an agent of the County of Alameda, which owns the Alameda County Fairgrounds, and uses its venue to host events like the September Festival. Consequently, the Complaint will refer to both parties, collectively, as the ACF, along with Does 1-20.

### B. The Government Claim.

48. Since the Alameda County Agricultural Fair Association may be considered a public entity under California law, the Soul Food Festival submitted a governmental claim to the Alameda County Agricultural Fair Association and the County of Alameda, on about February 10, 2023. This claim was rejected by the County of Alameda on about February 27, 2023. The Alameda County Agricultural Fair Association never provided a separate response within forty-five days of February 10, 2023, plus time for service, so this claim was implicitly rejected by the Alameda County Agricultural Fair Association on about April 3, 2023.

### C. The Agreement, and the Security Personnel the ACF Required for the September Festival as Part of the Agreement.

49. During September 2021, the Soul Food Festival and the ACF entered into a written contract for use of the Alameda County Fairgrounds amphitheater and surrounding grounds for the September Festival (the "Agreement"). A true and

6

EXHIBIT 1   Case No.   COMPLAINT

correct copy of the Agreement is attached as Exhibit A to this Complaint.

50.     Prior to entering into the Agreement, the ACF's personnel told the Soul Food Festival that if any problems occurred with security hired by the Soul Food Festival, the ACF would decline to agree a multi-year deal with the Soul Food Festival for future events.

51.     Consequently, the Soul Food Festival contracted for security directly through the ACF.  The Soul Food Festival had considered another vendor, but the ACF's threat caused it to contract for security directly through the ACF.

52.     Because it was providing security for its own venue, the ACF informed the Soul Food Festival the number of security personnel that were necessary for the September Festival.

53.     The Soul Food Festival deferred to the security judgments of the ACF for the September Festival, given its experience with other events at its venue.

54.     Under the Agreement reached, the ACF billed the Soul Food Festival for the security at the September Festival

55.     In addition, the Agreement required the Soul Food Festival to pay for a sufficient level of security, as the ACF deemed appropriate, for the September Festival.

56.     Addendum C to the Agreement indicated that the ACF required at least 18 security guards for the September Festival, including Alameda County Sheriffs, as well as other paid security personnel, for a total of at least 22 security personnel on each day with guests.

57.     In May 2022, the ACF informed the Soul Food Festival that the prices for its security vendor had increased so that they could provide "a higher quality of service."

58.     On around August 30, 2022, the ACF confirmed their initial estimate for the security personnel deemed necessary for the September Festival, including 18 security guards, plus Alameda County Sheriffs, as well as other paid security

7

EXHIBIT 1     Case No.          COMPLAINT

personnel, for a total of 22 security personnel on each day with guests.

**D.      The Incorrect Seating Chart Repeatedly Provided by the ACF.**

59.      During August 2021, as part of their negotiations to host an event by the Soul Food Festival, the ACF sent the Soul Food Festival the incorrect seating chart for the amphitheater with the Non-Existent Sections.  This seating chart purportedly showed every seat in the amphitheater.

60.      During January 2022, and after the Agreement was signed, the ACF again sent the Soul Food Festival the incorrect seating chart for the amphitheater with the Non-Existent Sections. This seating chart showed the same number of seats as the earlier seating chart sent by the ACF to the Soul Food Festival.

61.      Also during January 2022, the Soul Food Festival asked the ACF which ticket agency they used for their venue.

62.      The ACF replied that Saffire was the ticketing company exclusively used for the amphitheater at the time.

63.      Prior to and up until at least October 2022, after the September Festival had occurred, the ACF had only sent a seating chart for the amphitheater that included the Non-Existent Sections to its approved ticket vendor, Saffire.

64.      Up until the start of the September Festival, the Soul Food Festival was unaware that the ACF had sent Saffire and itself the incorrect seating chart for the amphitheater with the Non-Existent Sections on multiple occasions.

**E.      The ACF Misrepresented the Seats in the Amphitheater and Failed to Provide the Security It Deemed Necessary for the September Festival, Leading to Significant Security Lapses.**

65.      As part of the Agreement, the ACF offered the Soul Food Festival use of its amphitheater for the September Festival.

66.      The ACF repeatedly provided an incorrect seating chart for the amphitheater with the Non-Existent Sections to Saffire and the Soul Food Festival.

67.      All of these incorrect seating charts provided by the ACF showed the

8

EXHIBIT 1   Case No.   COMPLAINT

Non-Existent Sections.

68. In short, the ACF contracted with the Soul Food Festival to provide a venue that had significantly less seats than they stated it had, both before and after the Agreement was signed.

69. Both the Soul Food Festival, and Saffire, relied on the ACF's seating charts to sell tickets to the September Festival, including to the Non-Existent Sections.

70. The ACF knew that its amphitheater would not contain the Non-Existent Sections during the September Festival.

71. Consequently, the ACF did not provide the number of reserved seats for sale for the September Festival, approximately 1,065, because around 145 of those seats in the Non-Existent Section did not exist.

72. The ACF also knew that the security personnel it required for the September Festival included 18 security guards, plus Alameda County Sheriffs, as well as other paid security personnel, for a total of 22 security personnel on each day with guests.

73. Yet, during the September Festival, the ACF did not ensure that its security vendor provided the required security personnel.

74. That led to a severe shortage of security personnel, causing the Soul Food Festival to direct its own personnel, who were not trained security personnel, to try and help with security.

75. But at that point, the September Festival had begun so the Soul Food Festival tried to find seats for everyone, even if it meant that many guests were upset they were not sitting in the seats they had purchased.

76. The lack of security meant that certain areas of the venue had no security, which allowed dangerous situations to occur. For instance, an intoxicated individual was able to get backstage, when there was no security present, and accost a backup dancer.

9

EXHIBIT 1   Case No.   COMPLAINT

77. The Soul Food Festival repeatedly asked the ACF where all of the security personnel were during the September Festival.

78. Some of the limited security personnel provided also apparently took off their uniforms and either left the venue or quit working, exacerbating the shortage of security personnel.

79. As a result, the September Festival was left with a dearth of security personnel after the Soul Food Festival relied on the ACF to provide the security that the Soul Food Festival paid the Alameda County Fairgrounds for under the Agreement.

80. After the September Festival, the ACF's invoice for security and other items for the September Festival shows that the ACF did not provide the number of security personnel that the ACF said was necessary to secure the Soul Food Festival.

81. Moreover, some of the security personnel that are indicated in this invoice did not appear to be present during the September Festival, lowering the total number of security personnel working.

82. The ACF's actions and inactions led to substantial losses to the Soul Food Festival. Two juice stands, one dessert stand, and a fruit stand went unstaffed during the entire September Festival, leading to total revenue losses from each of these locations of at least: $105,000, $72,000, $133,000, and $130,000, respectively.

83. This also led to a complete loss of merchandise sales, totaling at least $767,000, when there was no one available to sell the Soul Food Festival's merchandise.

84. The Soul Food Festival also suffered significant losses after the ACF reversed course on permitting it to sell water and soda. Despite originally permitting the Soul Food Festival to sell water and soda at the September Festival, the ACF told the Soul Food Festival shortly before the September Festival that it could no longer make these sales. That led to an estimated loss of about $115,000.

85. Additionally, the Soul Food Festival has suffered significant losses to its

10

EXHIBIT 1    Case No.    COMPLAINT

reputation and good will, which has prevented it from hosting any subsequent events.

86.   The ACF is liable to the Soul Food Festival in an amount to be determined at trial but in no event less than $11,000,000, plus prejudgment interest, and Soul Food Festival's attorneys' fees and costs.

**F.   The ACF Censored the Performances at the September Festival.**

87.   The ACF agreed to permit the Soul Food Festival to use its space for various artists to perform at the September Festival.

88.   The September Festival only sold tickets to people ages 18 and older.

89.   One of the performers at the September Festival was Mario Hodge, a comedian.

90.   Hodge was an important performer at the September Festival, who was featured on the September Festival's promotional materials.

91.   Hodge performed comedy on the first day of the September Festival.

92.   Hodge also served as a host for the September Festival, and appeared on stage during the first day to introduce other artists, in addition to his comedic performances.

93.   At around 4 pm on the first day of the September Festival, personnel from the ACF, including Does 1-20, ordered the Soul Food Festival not to permit Hodge to appear on stage and perform his comedy shows during the remainder of the September Festival.

94.   The ACF explained that order came from its leadership, including Does 1-20, whose identities the Soul Food Festival has yet to ascertain.

95.   ACF personnel told the Soul Food Festival that the ACF would not host a future event by the Soul Food Festival, among other threats, if the Soul Food Festival allowed Hodge to perform during the remainder of the September Festival.

96.   At that time, the Soul Food Festival asked for an explanation as to why the ACF was prohibiting Hodge from performing further at the September Festival.

97.   The ACF personnel told the Soul Food Festival that it was due to

11

EXHIBIT 1   Case No.   COMPLAINT

Hodge's profanity and discussion of adult subjects.  Alameda County Fairgrounds personnel stated that the ACF, including Does 1-20, felt Hodge's comedy made neighbors and important guests uncomfortable.

98.    The Soul Food Festival then inquired with ACF personnel whether Hodge could perform if Hodge did not use profanity during an upcoming performance.  The ACF said no, that Hodge could still not perform again at the September Festival based on his performance earlier that day.

99.    In other words, in the middle of the September Festival, the ACF, including Does 1-20, prohibited the Soul Food Festival from letting Hodge give further comedic performances during the September Festival because they disagreed with the content of his comedy.

100.   The Soul Food Festival complied and removed Hodge from any further performances on the first day and the second day of the September Festival.

101.   The Soul Food Festival had a letter of intent with the Alameda County Fairgrounds regarding a multi-year contract for future festivals, and it acted to remove Hodge because it feared the loss of that multi-year contract if it defied the Alameda County Fairgrounds' order.

102.   The Alameda County Fairgrounds is liable to the Soul Food Festival in an amount to be determined at trial, plus prejudgment interest, and the Soul Food Festival's attorneys' fees and costs.

## FIRST CAUSE OF ACTION

**(Breach of Contract against all the Defendants, including Does 1-20)**

103.   The Soul Food Festival repeats and realleges the allegations set forth in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

104.   Under the Agreement, the ACF agreed to allow the Soul Food Festival to host the September Festival.

105.   The Soul Food Festival paid all amounts due under the Agreement when they became due.

12

EXHIBIT 1    Case No.    COMPLAINT

106. During the September Festival, the ACF failed to provide the Soul Food Festival with the amphitheater that it offered, which should have contained the Non-Existent Sections.

107. As a result, the ACF breached the Agreement.

108. Additionally, the ACF failed to secure the security the Soul Food Festival requested, and the ACF required for the September Festival.

109. Consequently, the Alameda County Fairgrounds breached the Agreement.

110. These contractual breaches led to significant problems throughout the September Festival, including tickets guests in the Non-Existent Sections taking the seats of other ticketed guests.

111. The ACF's failure to ensure adequate security personnel caused a security staffing crisis through the venue and grounds, causing the Soul Food Festival to redirect its personnel to perform security-related functions and not sell food or merchandise.

112. The Soul Food Festival has suffered significant losses to its reputation and good will, which has prevented it from hosting any subsequent events.

113. The Soul Food Festival has performed all obligations owed to the ACF under the Agreement, except those obligations the Soul Food Festival was prevented or excused from performing.

114. The Soul Food Festival has demanded payment for its damages arising from the September Festival, but the ACF has refused to make any payment.

115. As a direct and proximate result of the ACF's breaches, the Soul Food Festival has been damaged, and is entitled to recover from the ACF, damages in an amount to be determined at trial, but expected to exceed $11,750,000, plus pre-judgment interest and the Soul Food Festival's attorneys' fees and costs.

///

///

13

EXHIBIT 1     Case No.     COMPLAINT

## SECOND CAUSE OF ACTION

**(Negligent Misrepresentation Against all the Defendants, including Does 1-20)**

116.   The Soul Food Festival repeats and re-alleges the allegations in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

117.   Before and after the Agreement was signed, the ACF misrepresented the seating capacity of its amphitheater to the Soul Food Festival, including that it included seats in the Non-Existent Sections.

118.   Before and after the Agreement was signed, the ACF misrepresented the seating capacity of its amphitheater to Saffire, its approved ticket vendor, including that the amphitheater included seats in the Non-Existent Sections.

119.   These misrepresentations included incorrect seating charts showing the Non-Existent Sections as part of the seating in the ACF's amphitheater.

120.   Since the ACF controls and operates the amphitheater, it had no reasonable grounds to believe that the amphitheater included seats in the Non-Existent Sections.

121.   The ACF intended for the Soul Food Festival and Saffire to rely on its misrepresentations regarding the seating within the amphitheater, including the Non-Existent Sections, since it knew the Soul Food Festival and Saffire would use the seating charts provided by the ACF to sell tickets to the September Festival.

122.   Since these incorrect seating charts were provided to the Soul Food Festival and Saffire directly from the ACF on multiple occasions after they were requested, the Soul Food Festival and Saffire were justified in relying on the accuracy of these seating charts.

123.   As a direct and proximate result of the ACF's material misrepresentations, the Soul Food Festival has been damaged, and is entitled to recover from the ACF, damages in an amount to be determined at trial, but expected to exceed $11,750,000, plus pre-judgment interest and the Soul Food Festival's attorneys' fees and costs.

14

EXHIBIT 1   Case No.   COMPLAINT

## THIRD CAUSE OF ACTION

### (Breach of Contract against all the Defendants, including Does 1-20)

124.   The Soul Food Festival repeats and realleges the allegations set forth in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

125.   Under a signed agreement, the ACF agreed to "extend a multiyear" contract to the Soul Food Festival if certain conditions were met (the "Second Agreement").  A true and correct copy of the Second Agreement is attached as Exhibit B to this Complaint.

126.   In the Second Agreement, the ACF agreed to "work in good faith" with the Soul Food Festival so that the parties could reach a multi-year agreement for events hosted by the Soul Food Festival.

127.   Instead, after the ACF repeatedly breached the Agreement, it blamed the Soul Food Festival and terminated the Second Agreement without any negotiation.

128.   In doing so, the Alameda County Fairgrounds failed to act in good faith as required by the Second Agreement.

129.   The Soul Food Festival has performed all obligations owed to the ACF under the Second Agreement, except those obligations the Soul Food Festival was prevented or excused from performing.

130.   As a direct and proximate result of the ACF's contractual breaches, the Soul Food Festival has been damaged, and is entitled to recover from the ACF, damages in an amount to be determined at trial, plus pre-judgment interest and the Soul Food Festival's attorneys' fees and costs.

### FOURTH CAUSE OF ACTION

### (Violation of the Free Speech Clause of the First Amendment of the U.S. Constitution against all the Defendants, including Does 1-20)

131.   The Soul Food Festival repeats and realleges the allegations set forth in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

132.   The First Amendment to the United States Constitution provides in

15

EXHIBIT 1     Case No.     COMPLAINT

relevant part: "Congress shall make no law . . . abridging the freedom of speech."

133.   The First Amendment is applicable to state and local governments by incorporation in the Fourteenth Amendment.

134.   The Defendants approved the Soul Food Festival to hold the September Festival.

135.   The Defendants, including Does 1-20, knew Mario Hodge was a performer scheduled for the September Festival.

136.   The Defendants', including Does 1-20, prohibition on Hodge's performances during the September Festival, unconstitutionally restricted the Soul Food Festival's rights of free speech, which includes the right to refrain from speaking, and to choose how and when to deliver particular messages, and the Soul Food Festival's rights to select performers for the September Festival, including those that have a viewpoint that contradicts a government-dictated or government-approved message.

137.   The Defendants', including Does 1-20, prohibition on Hodge's performances during the September Festival was unconstitutionally and substantially overbroad.

138.   The Defendants', including Does 1-20, censorship imposed an unconstitutional chill and penalty on those speakers it dislikes, and without declaratory and/or injunctive relief, it will continue.

139.   The Defendants', including Does 1-20, prohibition on Hodge's performances during the September Festival was a content-based speech regulation.

140.   The Defendants', including Does 1-20, prohibition of Hodge's performances during the September Festival is subject to strict scrutiny.

141.   The Defendants', including Does 1-20, prohibition on Hodge's performances during the September Festival was not tailored at all, much less narrowly tailored, to further any governmental interest, and it did not do so by a means least restrictive of the Soul Food Festival's rights to free speech.

16

EXHIBIT 1     Case No.     COMPLAINT

142.   The Defendants', including Does 1-20, order to block Hodge from any future performances during the September Festival was an unconstitutional restriction of speech under any standard applicable to the Defendants.

143.   Accordingly, the Defendants', including Does 1-20, directive to block Hodge from any future performances during the September Festival violated the First Amendment of the United States Constitution.

144.   Therefore, the Defendants', including Does 1-20, directive to block Hodge from any future performances during the September Festival unconstitutionally infringed on the Soul Food Festival's rights, thereby entitling the Soul Food Festival to the relief requested below, pursuant to 42 U.S.C. § 1983. Additionally, the Soul Food Festival is entitled to monetary damages arising from the unconstitutional actions of Does 1-20, sued herein in their individual capacities but whose identifies have not yet been ascertained by the Soul Food Festival, as well as reasonable costs of suit.

145.   The Soul Food Festival found it necessary to engage the services of private counsel to vindicate their rights under the law. The Soul Food Festival is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FIFTH CAUSE OF ACTION

**(Retaliation in Violation of the Free Speech Clause of the First Amendment of the U.S. Constitution against all the Defendants, including Does 1-20)**

146.   The Soul Food Festival repeats and realleges the allegations set forth in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

147.   The Soul Food Festival and its performers at the September Festival engaged in constitutionally protected speech, namely, by inviting artists to perform.

148.   One of these performers was Mario Hodge, a comedian.

149.   By treating the Soul Food Festival and Hodge different from similarly situated groups and members of the public because they celebrate Black culture or

17

EXHIBIT 1    Case No.    COMPLAINT

they like a certain type of comedy or speech, among other things, the Defendants, including Does 1-20, acting under color of state law and according to policy and practice, have retaliated against the Soul Food Festival and Hodge for holding and expressing disfavored views, and in so retaliating, have engaged in conduct that would chill a person of ordinary firmness from continuing to engage in the protected speech activity.

150.   The Soul Food Festival and Hodge's actions in holding and expressing disfavored views was a substantial and motivating factor in the Defendants', including Does 1-20, retaliation against them by imposing unlawful restrictions on the Soul Food Festival and Hodges' federal civil rights secured under 42 U.S.C. § 1983 and the First Amendment, causing the Soul Food Festival to suffer and continue in the future to suffer irreparable injury that cannot be fully compensated by an award of monetary damages.

151.   Pursuant to 42 U.S.C. §§ 1983 and 1988, the Soul Food Festival is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining the Defendants', including Does 1-20, retaliation against the Soul Food Festival and Hodge for their utterances of protected speech. Additionally, the Soul Food Festival is entitled to monetary damages arising from the unconstitutional actions of Does 1-20, sued herein in their individual capacities but whose identifies have not yet been ascertained by the Soul Food Festival, as well as reasonable costs of suit.

152.   The Soul Food Festival found it necessary to engage the services of private counsel to vindicate their rights under the law. The Soul Food Festival is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

///

///

///

18

EXHIBIT 1     Case No.     COMPLAINT

**SIXTH CAUSE OF ACTION**

**(Violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution against all the Defendants, including Does 1-20)**

153.   The Soul Food Festival repeats and realleges the allegations set forth in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

154.   The Defendants, including Does 1-20, acting under color of state law and according to a pattern and practice, prohibited Hodge's performances during the September Festival, based upon a vague, overbroad, and improper policy that affords the Defendants unfettered discretion in its application, and therefore deprives Soul Food Festival and Hodge of their clearly established due process rights guaranteed by the Fourteenth Amendment to the United States Constitution.

155.   As a direct and proximate consequence of the Defendants' violations of Soul Food Festival's federal civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, the Soul Food Festival has suffered and will suffer irreparable injury that cannot fully be compensated by an award of monetary damages.

156.   Pursuant to 42 U.S.C. §§ 1983 and 1988, the Soul Food Festival is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants', including Does 1-20, policy and practice that led to prohibition of Hodge's performances during the September Festival. Additionally, the Soul Food Festival is entitled to monetary damages arising from the unconstitutional actions of Does 1-20, sued herein in their individual capacities but whose identifies have not yet been ascertained by the Soul Food Festival, as well as reasonable costs of suit.

157.   The Soul Food Festival found it necessary to engage the services of private counsel to vindicate their rights under the law. The Soul Food Festival is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

///

EXHIBIT 1   Case No.   COMPLAINT

## SEVENTH CAUSE OF ACTION

**(Violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution against all the Defendants, including Does 1-20)**

158. The Soul Food Festival repeats and realleges the allegations set forth in the preceding and latter paragraphs of the Complaint as if fully set forth herein.

159. By treating the Soul Food Festival, its artists, and Hodge differently from similarly situated groups and members of the public because they celebrate Black culture, among other things, the Defendants, including Does 1-20, acting under color of state law and according to policy and practice, have engaged in actions that discriminate on the basis of race and political beliefs and have therefore deprived the Soul Food Festival and Hodge of their clearly established equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution.

160. As a direct and proximate consequence of the Defendants', including Does 1-20, violations of the Soul Food Festival's federal civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, the Soul Food Festival has suffered and will suffer irreparable injury that cannot be fully compensated by an award of monetary damages.

161. Pursuant to 42 U.S.C. §§ 1983 and 1988, the Soul Food Festival is entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Defendants', including Does 1-20, policy and practice that led to prohibition of Hodge's performances during the September Festival. Additionally, the Soul Food Festival is entitled to monetary damages arising from the unconstitutional actions of Does 1-20, sued herein in their individual capacities but whose identifies have not yet been ascertained by the Soul Food Festival, as well as reasonable costs of suit.

162. The Soul Food Festival found it necessary to engage the services of private counsel to vindicate their rights under the law. The Soul Food Festival is therefore entitled to an award of attorneys' fees and costs pursuant to 42 U.S.C. §

20

EXHIBIT 1    Case No.    COMPLAINT

1988.

## PRAYER FOR RELIEF

WHEREFORE, the Soul Food Festival prays for a judgment against the Defendants, including Does 1-20, as follows:

A.    For damages in an amount to be determined at trial but in no event less than $11,750,000, including consequential damages;

B.    For prejudgment interest;

C.    For the Soul Food Festival's attorneys' fees and costs incurred;

D.    For declaratory relief;

E.    For injunctive relief, attachment, and the appointment of a receiver; and

F.    For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

Dated: May 26, 2023        FLOWE LEGAL, P.C.

By: _____

Sean J. Lowe

Attorneys for Plaintiff
CALIFORNIA SOUL FOOD COOKOUT
AND FESTIVAL INC.

21

## DEMAND FOR JURY TRIAL

The Soul Food Festival demands a trial by jury of all issues triable to a jury.

Respectfully submitted,

Dated: May 26, 2023                    FLOWE LEGAL, P.C.

By: _____
                    Sean J. Lowe

Attorneys for Plaintiff
CALIFORNIA SOUL FOOD COOKOUT
AND FESTIVAL INC.

22

EXHIBIT 1     Case No.     COMPLAINT

# EXHIBIT A

EXHIBIT 1

**ALAMEDA COUNTY FAIRGROUNDS**
**P L E A S A N T O N**

4501 Pleasanton Avenue, Pleasanton CA, 94566
(925) 426-7600-Main (925) 426-7599 Fax

## AGREEMENT –USE OF ALAMEDA COUNTY FAIRGROUNDS

Date: September 23, 2021                                Contract **#21-IE-96**

### 1. PARTIES.

This License Agreement, hereafter LICENSE, is by and between the **Alameda County Agricultural Fair Association**, hereafter ASSOCIATION, and **California Soul Food Cookout And Festival Inc.,** hereafter LICENSEE, represented herein by **Annette Jackson**, a duly Authorized Representative.

LICENSEE represents and warrants that the legal name as contained herein, along with all other information in this LICENSE, is accurate and correct in all respects as of the date of signature of this LICENSE and continuing through its duration. LICENSEE further represents and warrants that the Authorized Representative listed in the LICENSE has full, complete and absolute authority to bind LICENSEE. If LICENSEE is a corporation, it warrants and represents that it is in good standing and active and, if it is not a corporation, it warrants and represents that it is authorized to do business in the State of California. Any change in LICENSEE's legal name, fictitious name, address, telephone number, or Authorized Representative, shall be forwarded to ASSOCIATION, in writing, within three (3) days after the change. Furthermore, the Authorized Representative executing this LICENSE on behalf of LICENSEE absolutely, personally, unconditionally and continually warrants and guarantees LICENSEE's full and faithful performance and payment of all obligations under this LICENSE.

### 2. DATES.

WHEREAS, LICENSEE desires to secure from ASSOCIATION certain rights and privileges and to obtain use of ASSOCIATION premises on:

**9/16/2022 - 9/19/2022** (Set up: **9/16/2022**, Show/ Event: **9/17/2022-9/18/2022**, Take Down: **9/19/2022**)

This LICENSE shall be only for the dates as set forth herein. LICENSEE agrees that the granting of this LICENSE shall not entitle LICENSEE to any future right to use the Fairgrounds. ASSOCIATION is not prevented from granting a license to any entity, which is competitive to LICENSEE.

### 3. FACILITIES.

ASSOCIATION grants to LICENSEE the right to use the space(s) described below, hereafter Rented Facilities, subject to the terms and conditions of this LICENSE:

**Front Grounds & Amphitheater**

### 4. PURPOSE.

The purpose(s) of occupancy shall be limited to, and shall be for no other purpose, than as follows:

**The California Soul Food Cookout and Festival**

Page 1 of 7                                        Initials ___

**Ex. A, p. 1**   EXHIBIT 1

If LICENSEE changes, alters or deters from the stated, agreed upon purpose, without prior approval from ASSOCIATION, ASSOCIATION reserves the right to terminate this LICENSE.

5. **GUIDELINES.**

The "Guidelines for Licensing Fairground Facilities", hereinafter GUIDELINES, located in "Addendum B," contains the policies and procedures of ASSOCIATION. GUIDELINES issued by ASSOCIATION are made a part of this LICENSE as though fully incorporated herein. LICENSEE has read the GUIDELINES and consents that they shall apply, in full.

Initials _____

6. **FEES.**

LICENSEE agrees to pay to ASSOCIATION, for the rights and privileges hereby granted, the amount(s) and in the manner set forth below:

A. **Rental Fee: $27,300.00**

The Rental Fee payment shall be paid by LICENSEE to ASSOCIATION no later than thirty (30) days prior to the first setup date, as set forth herein. Use of the Rented Facilities outside of the standard 5:00AM to 12:00AM range will incur an overtime rental charge of $250 per hour. Use of the Rented Facilities outside of the standard hours must be prearranged. Other fees may apply for staffing and security in addition to the Rental Fee for any hours of use. Failure of LICENSEE to pay the Rental Fee by the time stipulated, unless otherwise approved by ASSOCIATION, shall be cause for termination of the LICENSE by ASSOCIATION.

B. **Security Deposit: $10,000.00**

LICENSEE agrees to pay the Security Deposit to reserve the Rented Facilities. The Security Deposit must be paid prior to or at the time of signing of this LICENSE. The balance of the Security Deposit, if any, shall be returned to LICENSEE within thirty (30) days following the take down day under the terms of this LICENSE. LICENSEE charges shall pay all estimated equipment and labor in full no later than five (5) business days prior to move in. If LICENSEE accrues any additional charges thereafter, such charges shall be deducted from the Security Deposit. If the total amount of additional charges exceeds the amount of the Security Deposit made, then LICENSEE shall pay such charges within ten (10) days of receipt of statement from ASSOCIATION. If the event is cancelled or materially altered without prior approval for any reason or LICENSEE breaches a term of this LICENSE, LICENSEE agrees that the Security Deposit shall not be refundable.

C. **Equipment/Services:**

All estimated equipment and labor charges are to be paid in full no later than five (5) business days prior to move in. If all fees are not paid at least five (5) business days prior to move in, additional fees will be incurred and event may be cancelled for non-payment. Equipment or services rented thereafter will be charged at a rate increase of 150%. Requests for equipment and/or services must come from LICENSEE or a duly Authorized Representative. All charges will be billed to LICENSEE. Every effort should be made by LICENSEE to order equipment at least fourteen (14) days prior to their event.

7. **PROVISIONS.**

Any additional use of ASSOCIATION property, labor and/or equipment is subject to current rates, subject to change.

A. **Staff Charge:** $29/hr
B. **Post-Event Cleaning:** Based on actual hours of cleaning, as needed: $29/hr/person
C. **Trash Disposal:** One 3 yard dumpster, per event day included in rental. Trash will be disposed of at current standard rates: $67/3-yard dumpster.

Page 2 of 7                                    Initials _____

**Ex. A, p. 2**   EXHIBIT 1

D. **Custodial Services**: Restroom Attendants: $60/hr for two

         Supervisor: $37/hr

         Lead: $37/hr

E. **Security**: Security required when alcohol is present or at the discretion of ASSOCIATION

       Rover/Guard: $28/hr, $41/hr overtime

       Supervisor: $42/hr, $63/hr overtime

       Dispatcher: $29/hr, $44/hr overtime

F. **Parking:** Parking charged at a minimum of $15 per vehicle for general parking areas. Preferred parking areas charged at premium rates.

G. **Equipment**: See "Addendum A" for pricing, equipment availability is not guaranteed

H. **Specific Event Pricing**: See "Addendum C" for specific event pricing, if requested

8. **INSURANCE.**

A. All events are required to provide or obtain proof of comprehensive general liability insurance with a limit of not less than one million dollars ($1,000,000) combined single limit per occurrence for bodily injury and property damage. Higher limits may be required as determined by ASSOCIATION based on the type of event and liability exposure.

B. The Certificate shall contain the following additional insured clause: **"That the State of California, the California Fair Services Authority, the District Agricultural Association, The Alameda County Agricultural Fair Association, the County of Alameda, Lessor/Sublessor if fair site is leased/subleased, or Entities (public or non-profit) operating California designated agricultural fairs, their directors, officers, agents, servants, and employees are made additional insured, but only insofar as the operations under this contract are concerned."** The Certificate shall be properly endorsed, provide at least thirty (30) days prior written notice in case of cancellation or material change in form of coverage and submitted to ASSOCIATION no later than thirty (30) days prior to the first setup date.

C. **Primary Coverage** - The LICENSEE insurance coverage shall be primary and any separate coverage or protection available to the fair or any other additional insured shall be secondary.

D. **LICENSEE's Responsibility** - Nothing herein shall be construed as limiting in any way the extent to which LICENSEE may be held responsible for damages resulting from LICENSEE's operations, acts, omissions or negligence. Insurance coverage obtained in the minimum amounts specified above shall not relieve LICENSEE of liability in excess of such minimum coverage, nor shall it preclude the fair from taking other actions available to it under contract documents or by law, including, but not limited to, actions pursuant to LICENSEE's indemnity obligations. The LICENSEE indemnity obligation shall survive the expiration, termination or assignment of this contract.

9. **LATE FEES.**

ASSOCIATION reserves the right to impose the highest legal rate interest penalty for all past due monies owed to ASSOCIATION. If LICENSEE incurs any legal charges as a result of checks drawn on insufficient accounts, LICENSEE shall pay such charges.

10. **TERMINATION.**

A. If LICENSEE fails to comply with the terms of this LICENSE or GUIDELINES, or with conditions deemed necessary and appropriate by ASSOCIATION, ASSOCIATION may terminate the LICENSE and deem all payments, both the Security Deposit and Rental Fee, as non-refundable. ASSOCIATION shall have the right to occupy the Rented Facilities in any manner deemed in the best interest of ASSOCIATION.

Initials

**Ex. A, p. 3**   EXHIBIT 1

B. If ever the terms of this LICENSE becomes null and void or ASSOCIATION exercises a right to terminate or cancel this LICENSE, all of LICENSEE's rights hereunder shall cease. LICENSEE shall immediately surrender possession of the Rented Facilities, if in possession at time, and ASSOCIATION shall have the right to dispossess LICENSEE and their invitees without liability to action for prosecution or damages as a result thereof.

C. If LICENSEE cancels the LICENSE for any reason, ASSOCATION has the right to deem all payments, both the Security Deposit and Rental Fee, as non-refundable.

## 11. CONDUCT.

LICENSEE agrees to observe and comply with, and execute and perform all Federal, State, County and Municipal statutes, ordinances, rules, regulations and orders of any and all lawful rules, regulations and orders of any Federal, State, County Municipal Board, public officer, public agency or public authority, which in any way affect, relate to or are applicable to the operations hereunder. ASSOCIATION will make available information regarding LICENSEE to any Local, State and Federal agency upon request. If LICENSEE or LICENSEE's invitees are found in violation of such statutes, ordinances, rules, regulations or orders on the premises, ASSOCIATION reserves the right to retain the Security Deposit and report any and all illegal activity to the proper authorities.

## 12. ASSIGNMENT.

LICENSEE agrees that it will not sell, exchange or barter, or permit his employees to sell, exchange or barter, any permits issued to LICENSEE or their employees hereunder. It is mutually agreed that this LICENSE or the privileges granted herein, or any part thereof, cannot be assigned or transferred without the written consent of ASSOCIATION.

## 13. ADVERTISING FOR PUBLIC EVENTS.

If LICENSEE is hosting an event open to the public, LICENSEE shall use best efforts to advertise and obtain appropriate sign permits for advertising. LICENSEE shall place specific information about the event on their website and a link to the Alameda County Fair Website (www.alamedacountyfair.com). LICENSEE shall use Alameda County Fairgrounds in all media advertisements referencing their event at the Fairgrounds. All directional information is to include event entrance point at Gate 8 & Gate 12 on the corner of Valley and Bernal, Pleasanton, CA 94566. LICENSEE shall submit an event listing request no later than thirty (30) days prior to the event. LICENSEE shall not market or otherwise publicize event until LICENSE is duly accepted and signed by ASSOCIATION's Authorized Representative.

ASSOCIATION reserves the right to advertise LICENSEE's event using ASSOCIATION's designs, artwork, logo and/or other symbols, colors, typeface or phrases. LICENSEE shall not have the right to change any components of ASSOCIATION's advertising for LICENSEE's event. LICENSEE further grants to ASSOCIATION the non-exclusive, royalty free license to use the trademarks of the LICENSEE for the purpose of the ASSOCIATION publicizing or promoting LICENSEE's event and for any other purpose of ASSOCIATION incidental to such purpose. ASSOCIATION will not publicize LICENSEE's event until all contractual obligations are met.

## 14. LEGAL PROVISIONS.

A. **Liability:** All property, of any nature whatsoever, used by LICENSEE in connection with the Rented Facilities, is used at LICENSEE'S own expense. All risk of loss, damage, injury, or liability of any nature whatsoever to LICENSEE or his property arising in any respect, directly or indirectly, out of use or occupation of any part of the premises of ASSOCIATION pursuant to this LICENSE shall be borne by LICENSEE.

B. **Waiver of Claims:** LICENSEE, his agents, officers , and other Authorized Representatives hereby waive all rights and claims, claims for compensation, and/or actions and causes of action and damages arising from any and all losses and damages sustained by reason of any defect, deficiency or impairment of the electrical, computer systems, plumbing and air conditioning installations, or any part thereof, furnished on the Fairgrounds or by reason of any loss or impairment of lighting, electrical current or water which may occur from any cause, or for

Ex. A, p. 4    EXHIBIT 1

any loss or damage sustained resulting from fire, blackout, brown-out, water, wind, civil commotion, riot, labor strikes, or act of God. LICENSEE, his agent, officers, and other authorized representatives, hereby waive all rights and claims, action and causes of action and damages arising from any of the causes aforesaid or in any manner whatsoever.

C. **Indemnification:** LICENSEE agrees to indemnify, defend and hold harmless the State of California, the County of Alameda, the Alameda County Agricultural Fair Association, and their respective officers, agents, deputies and employees from any and all claims, causes of action and suits accruing or resulting from any and all damage, injury or loss to any person or persons, including all persons to whom LICENSEE may be liable under any Worker's Compensation Law, to real or personal property, done directly or indirectly by LICENSEE or any spectator, solicited or unsolicited, and for damages caused by accident, neglect and/or arising out of or in any way connected with the exercise of LICENSE or the privileges herein granted.

D. **License Limitations:** This LICENSE does not constitute a lease, but constitutes a mere license to LICENSEE and is limited to the Rented Facilities which are expressly and specifically described herein. All adjacent and surrounding space belongs to ASSOCIATION and may be used or rented at ASSOCIATION's discretion. All activities of LICENSEE, his agents, employees or representatives must be confined within the space allotted to LICENSEE and may not be carried elsewhere on the premises of ASSOCIATION.

E. **Legal Venue:** Venue for any legal proceedings brought in connection to this LICENSE or any aspect of the relationship between the parties, shall be in Alameda County. This LICENSE and all documents related thereto shall be governed by and construed in accordance with the laws of the State of California.

F. **Legal Fees:** In the event of legal action by ASSOCIATION against LICENSEE arising out of this LICENSE, LICENSEE agrees to pay all legal costs to ASSOCIATION of such action, including reasonable attorney fees.

## 15. FORCE MAJEURE.

Should LICENSEE be prevented from taking possession of the Facilities or present the Event due to an Event of Force Majeure, as defined herein, neither ASSOCIATION nor LICENSEE shall have any liability to the other party under this AGREEMENT. The ASSOCIATION shall retain the Security Deposit and Rental Fee paid by LICENSEE, to be applied toward the rescheduled use of the Facilities or the Event to take place within twelve (12) calendar months of when notice was given by the party claiming an Event of Force Majeure. Together, the LICENSEE and the ASSOCIATION shall work in good faith to reschedule the LICENSEE's use of the Facilities or the Event within such twelve (12) calendar-month period. If the LICENSEE does not use the Facilities or the Event within such twelve (12) calendar-month period, ASSOCIATION shall refund the Rental Fee and/or Security Deposit paid by LICENSEE in its sole discretion. The term "Event of Force Majeure" shall mean any and all acts of God, strikes, lock-outs, other industrial disturbances, acts of the public enemy, laws, rules and regulations of governmental or quasi-governmental entities, governmental orders not in effect as of the effective date of this AGREEMENT/LICENSE, wars, blockades, insurrections, riots, terrorism or terrorist threats, epidemics, pandemics, lightning, earthquakes, hurricanes, floods, washouts, fire or other casualty, civil disturbances, explosions, breakage or accidents to equipment or machinery at no fault to the party claiming an Event of Force Majeure, threats of bombs or similar interruptions, confiscation or seizure by any government or public authority, nuclear reaction, radioactive contamination, or any other causes of like kind and circumstance, whether herein enumerated or otherwise such events that are not reasonably within the control or caused by the party claiming the right to delay the performance on account of such occurrence; provided, however, in no circumstances shall the monetary inability of a party to perform any obligation contained in this Agreement be construed to be an Event of Force Majeure.

Page 5 of 7

Initials _____

## Ex. A, p. 5    EXHIBIT 1

## 16.    TAXES.

Any applicable license and/or taxes are to be paid by LICENSEE. LICENSEE shall, upon request, furnish to ASSOCIATION for inspection receipts for license fees and tax deposits. LICENSEE agrees to obtain sales tax permit from the State Board of Equalization and will be responsible for payment of taxes levied on any such interest. It is understood and agreed to by LICENSEE that the purpose for the use of the Fairgrounds facilities must comply with the City, County and State rules, regulations, laws and ordinances, and further agrees to comply with AB253 (Chapter 356 statutes of 1977) adds section 107.6 to Revenue & Taxation Code. LICENSEE recognizes and understands that this LICENSE may create a possessory interest subject to payment of taxation, and LICENSEE may be subject to payment of property taxes levied on such interest. LICENSEE further agrees to observe all municipal, county, and State sign ordinances and regulations. ASSOCIATION shall provide requesting municipal, county and State agencies all information available to ASSOCIATION to expedite contact with LICENSEE.

## 17. EMPLOYMENT.

**A.** LICENSEE agrees to comply with all applicable laws, regulations and executive orders regarding employment and equal access to public facilities, in the use of this LICENSE. LICENSEE will not discriminate against an employee or applicant for employment because of race, color, religion, ancestry, sex or national origin, as required by law. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection or training, including apprenticeship. LICENSEE shall post in conspicuous places, available to employees and applicants for employment, notices provided by the State of California, setting forth the provisions of the Fair Employment Practices Section. LICENSEE will permit access to their records of employment, employment advertisements, application forms, and other pertinent data and records by the State Fair Employment Practice Commission, or any other agency of the State of California designated by ASSOCIATION, for the purposes of investigation of this LICENSE.

**B.** **Workers' Compensation:** If LICENSEE employs personnel to work during the LICENSE, LICENSEE must provide a certificate showing coverage of Workers' Compensation Insurance to ASSOCIATION. The certificate must cover the full liability of the promoters in accordance with the provisions of Division IV of the Labor Code of the State of California and any act amendatory thereof. By signing this LICENSE, LICENSEE agrees to have such insurance, if applicable.

## 18. ADA.

LICENSEE by signing this LICENSE assures, ASSOCIATION that LICENSEE and each of LICENSEE's sublicenses, leases, sub-contractors, vendors, exhibitors, promoters, agents and employees, if any, comply with the American with Disabilities Act ("ADA") of 1990, (42.U.S.C. 12101 et seq.) and California Disabled Persons Act (Cal Civil. Code 54 et Seq.) and all relevant provisions of the Health and Safety and Business and Professions Codes, as well as all applicable regulations and Guidelines issued pursuant to the ADA, namely the American with Disabilities Act Accessibility Guidelines ("ADAAG") and all applicable regulations and guidelines issued pursuant to California law including Title 24 of California's Building Code. LICENSEE further agrees that this covenant to comply may subject LICENSEE to civil liability and damages. LICENSEE further agrees that this covenant to comply with State and Federal disability access requirements continues for the duration of the LICENSE.

## 19. DISCLAIMERS.

**A. Disaster Center:** The Alameda County Fairgrounds may be designated a disaster center for an emergency or major catastrophe that occurs around or on the Fairgrounds. In the event that the Director of Emergency Services, or its acting agents, the Alameda County Sheriff's Office, the Pleasanton Police Department or ASSOCIATION activates the "Alameda County Agricultural Fair Association Evacuation Plan", LICENSEE's rights hereunder shall cease, and LICENSEE will cooperate with Emergency Services. LICENSEE may have to immediately surrender possession of the Rented Facilities, if in possession at time, and ASSOCIATION shall have the right to dispossess LICENSEE and their invitees without liability to action for prosecution or damages as a result thereof.

Page 6 of 7                                                                      Initials ⎣ _ℓ⟋_ ⎦

**Ex. A, p. 6**    EXHIBIT 1

B. **Vision Plan:** ASSOCIATION has adopted a facility vision plan for the Fairgrounds property and Association Facilities, which may be implemented, in whole or in part, during the term of this LICENSE and any extended term(s). Implementation of the facility vision plan may, within reason, require LICENSEE to relocate all or part of its event, equipment, footprint and/or operations to a comparable space on the Fairgrounds. The selection of any site on Association Facilities for relocation, if required, is at the sole and exclusive discretion of ASSOCIATION. ASSOCIATION reserves the right to operate any equipment and/or structure on property at any time, including but not limited to future buildings and/or sky ride.

C. LICENSEE agrees that it is responsible for the success or failure of their event. The fact that LICENSEE is restricted by and subject to the terms and conditions of this LICENSE is a risk that LICENSEE freely assumes.

D. LICENSEE, his officers, agents and employees shall act in an independent capacity and shall not represent themselves or be construed to be officers, agents, or employees of ASSOCIATION or the County of Alameda.

E. It is mutually understood and agreed that no alteration or variation of the terms of this contract shall be valid, unless made in writing and signed by the parties hereto. It is mutually understood that no oral understandings or agreements shall be binding upon the parties, unless incorporated herein or made in writing and signed by the parties hereto.

F. ASSOCIATION reserves the final and absolute right to interpret rules and regulations, and arbitrarily settle and determine all matters, questions and differences in regard thereto, or otherwise out of, or connected with ASSOCIATION.

G. It is mutually understood and agreed that failure of the ASSOCIATION to insist in any one or more instances upon the observance and/or performance of any of the foregoing provisions shall not constitute a waiver of any subsequent breach or breaches thereof.

H. This LICENSE is not binding upon ASSOCIATION until it has been duly accepted and signed by ASSOCIATION's Authorized Representative. This LICENSE is valid for 30 days. If LICENSE is not duly accepted and fully executed within 30 days, the terms of the LICENSE may become null and void.

I. Time is of the essence in every provision of this LICENSE.

J. LICENSEE by affixing his/her signature to this LICENSE hereby acknowledges the terms and conditions of this LICENSE and understands and acknowledges the rules and regulations of ASSOCIATION with such rules and regulations as heretofore set forth, hereinafter set forth and attached to this LICENSE.

IN WITNESS WHEREOF, This LICENSE has been executed, by and on behalf of the parties hereto, the day and year first above written.

Organization / Individual:
**California Soul Food Cookout And Festival Inc.**                    **Annette Jackson**
Organization                                                         Individual

Address: **3220 W. Monte Vista Ave. Suite 176, Turlock, CA 95380**    Phone No: **510-290-9640**

*Annette Jackson*                                                    9/28/2021
— 1CAD2244D3DC4C1...

SIGNATURE OF AUTHORIZED REPRESENTATIVE                               DATE

— DocuSigned by:
*Melissa Glickman*                                                   9/28/2021
— B416A5F3D7E14CF...

MELISSA GLICKMAN, EVENT SALES AND COORDINATION MANAGER              DATE
ALAMEDA COUNTY AGRICULTURAL FAIR ASSOCIATION

Page 7 of 7                                                          Initials ___

**Ex. A, p. 7**   EXHIBIT 1

# Equipment Rate Sheet

## ADDENDUM A- EQUIPMENT FEES

| | |
|---|---|
| • 8' Tables | $ 9 each |
| • 8' Tables, skirted | $ 25 each |
| • 6' Tables, | $ 7.50 each |
| • 6' Tables, skirted | $ 25 each |
| • Cocktail Tables | $ 12 each, 42" tall, 36" rounds |
| • 5' Round Tables | $ 10 each |
| • 4' Tables | $ 7 each |
| • 4' Tables, skirted | $ 20 each |
| • Barricades | $ 5 each |
| • Barbecue (mobile units) | $ 50 each |
| • Bleachers (3 sizes) | $ 100-200 each section |
| • Chairs | $ 1 each |
| • Easels | $ 15 each |
| • Fencing | $ 2.75/foot (6' high chain-link) |
| • Hunter Jump Set of 8 | $ 1000 set |
| • Ice tubs (no ice) | $ 10 each |
| • K-rail | $ 250 each |
| • Metal Detector and Wand | $ 100 each |
| • Park Benches | $ 4 each |
| • Picnic Tables | $ 12 each |
| • Pipe & Drape | $ 2/foot (8' high drape) |
| • Pipe & Drape | $ 3.50/foot (12' high drape) |
| • Plants | $ 5 /5 gal, $10 /10 gal, $15 /15 gal |
| • Podium | $ 50 |
| • Projector | $ 75 |
| • Risers (4'x8'x12") | $ 15 per section |
| • Schooling Jump Set of 10 | $ 500 set |
| • Screens 6x6 or 7x7 | $ 75 |
| • Sound System (Permanent Installation in Buildings A, B, C, O, P, Q & R) | $ 350 first building, $150 each additional |
| • Sound System (Two Speakers & Cordless Microphone) | $ 250 |
| • Stage (24'x24'x36") | $ 1,000 each (2 available) |
| • Stage Sections (6'x8'x24" sections) | $ 50 per section |
| • Television 80" | $ 200 each |
| • Tent Canopies (10'x10') | $ 100 each |
| • Tent Canopies (10'x20') | $ 150 each |
| • Ticket Booths | $ 100 each |
| • Turnstile Units | $ 35 each |
| • Waste Disposal Rates | Current rates |

## FAIR SERVICES AVAILABLE

| | |
|---|---|
| • Forklift and Operator (1 hr. min) | $75 per hr, $85 per hr after 5PM |
| • Restroom Attendants (4 hr. min) | $60 per hr, per pair |
| • Clean Up Services | $29 per hr, $30 per hr after 5PM |
| • Electrician | Electrical Technician | Plumber | $50 per hr, $75 per hr after 5PM |

*Water and electrical pricing based on need and availability
Pricing subject to change

**Ex. A, p. 8** EXHIBIT 1 Initials



**ADDENDUM B**
**GUIDELINES FOR LICENSING FAIRGROUND FACILITIES**

1. **STATEMENT OF POLICIES AND PROCEDURES**
   The following GUIDELINES are to inform you of our policies and procedures. Your signature indicates your acceptance of these GUIDELINES. These GUIDELINES are fully incorporated in the LICENSE AGREEMENT. No event may occur on the Alameda County Fairgrounds unless these GUIDELINES are accepted and abided by.

   ASSOCIATION reserves the right to accept or deny rental of the Fairgrounds when, in the opinion of management, such events may conflict with similar events already scheduled or are not in the best interests of ASSOCIATION, the County of Alameda or the general public.

2. **RESERVATION OF FACILITIES.** A Security Deposit must be submitted to hold requested date(s), pending license formation. An event space is not guaranteed until a LICENSE AGREEMENT is signed by ASSOCIATION. Rented Facilities are limited to the space(s), date(s), time(s) and purpose stated in the LICENSE. Changes to the use of the Rented Facilities or any additions, deletions or changes to the LICENSE must be approved in writing by ASSOCIATION prior to the event.

   ASSOCIATION does not guarantee multi-year bookings for any event. Tentative reservations for future dates are permitted to LICENSEES who have held previous events at the Fairgrounds pursuant to ASSOCIATION's booking matrix. Tentative reservations are not confirmed and may be altered or cancelled by ASSOCIATION until the Security Deposit is submitted and a LICENSE is signed by ASSOCIATION.

3. **CANCELLATION POLICY.** If an event is cancelled by LICENSEE after the signing of the LICENSE by ASSOCIATION, ASSOCIATION has the right to retain the full portion of the Security Deposit paid. If an event is cancelled by LICENSEE three (3) months in advance or less, the following cancellation fees shall be paid to ASSOCIATION in addition to the Security Deposit:

   | | |
   |---|---|
   | 60-90 days prior to event date: | 25% of Rental Fees |
   | 31-59 days prior to event date: | 50% of Rental Fees |
   | 14-30 days prior to event date: | 75% of Rental Fees |
   | 1-14 days prior to event date: | 100% of Rental Fees and additional charges |

4. **HOURS OF USE.** Rented Facilities may be used from 5:00AM to 12:00AM, subject to noise and activity restrictions. Timeframes listed in the LICENSE shall take precedence. Access before 8:00AM must be approved by ASSOCIATION prior to the start of the event. If LICENSEE requires access prior to 5:00AM or after 12:00AM, such usage must be approved by ASSOCIATION, in writing, prior to the start of the event and additional fees may apply. Any hours of usage before 8:00 A.M. or after 5:00 P.M. will require a staff person at a rate of $27 per hour. The staff person will unlock the buildings for authorized personnel at the designated start time. If LICENSEE continues past the allotted timeframe without approval, LICENSEE shall be liable for additional fees, labor charges, and fines, as determined by ASSOCIATION. All social gatherings are restricted to a duration of six (6) hours maximum.

5. **FOOD, BEVERAGE, AND ALCOHOL.** Spectra, ASSOCIATION's contracted on-site caterer, shall retain the right to provide all concession, catering and alcohol services for events. ASSOCIATION reserves the right to specify the locations where food, beverages and alcohol are to be provided and/or sold by Spectra. Permanent kitchens and/or food concession locations may not be blocked or access restricted by LICENSEE and/or their

Page 1 of 6

**Ex. A, p. 9** EXHIBIT 1

agents. **If you are planning to have your event catered or have alcohol at your event, you must use Spectra.** Please contact them at (925) 426-7630 to make arrangements.

Any violation of this policy could result in adverse action up to, and including, forfeiture of the Security Deposit, monetary fines per violation, criminal prosecution and/or termination of event. **It is PROHIBITED to bring in your own catering, concessions, or alcohol services or to have your guests bring in their own catering, concessions, or alcohol.** ASSOCIATION has an exclusive beverage contract with PepsiCo for all non-alcoholic beverages. Only PepsiCo products may be served and/or sold on grounds.

6. **ADMISSION.** LICENSEE does hereby agree to provide ASSOCIATION with thirty (30) complimentary show tickets. ASSOCIATION provides credentials to officers and employees of ASSOCIATION for all commercial events on the Fairgrounds. LICENSEE does hereby agree to honor Alameda County Agricultural Fair Association credentials.

7. **CLEANLINESS.** LICENSEE shall conduct their business in a quiet and orderly manner; shall deposit all rubbish, slop, garbage, tin cans, paper; etc. in receptacles provided by ASSOCIATION and shall keep the area within and surrounding the Rented Facilities from all rubbish and debris. LICENSEE agrees to maintain the Rented Facilities in good condition and to return these premises in the same condition as they were before use or access by LICENSEE, except only for ordinary wear and tear. Any areas not returned in the same condition as provided may be subject to maintenance, cleaning, and damage fees.

8. **CUSTODIAL SERVICE.** ASSOCIATION reserves the right to determine the necessary minimum custodial services based upon the nature of the event and anticipated attendance. The rates of ASSOCIATION'S custodial service, Venue Smart, are subject to change without any prior notice to LICENSEE. ASSOCIATION reserves the right to charge LICENSEE Venue Smart's applicable rates at the time of LICENSEE's event.

9. **DAMAGES TO FAIRGROUND FACILITIES.** It is the responsibility of LICENSEE to return the Rented Facilities in the condition they were received. Any damages caused by LICENSEE's use of the Fairgrounds will be charged to LICENSEE at the applicable rates for labor and materials.

10. **DELIVERIES.** Deliveries will be accepted by ASSOCIATION only during LICENSEE's contracted rental period. Any exceptions <u>must</u> be approved by ASSOCIATION prior to delivery and may result in storage fees. All event deliveries must be marked clearly with the event name, vendor contact, and building location.

Any freight/packages to be shipped after the event ends must be arranged in advance. All Bills of Lading must be filled out properly. Any items left following an event, will be charged to LICENSEE at $100 per item per day in addition to discretional building rental fees for failure to move out. ASSOCIATION will not be responsible for anything left in unattended buildings.

11. **EVENT LAYOUTS.** LICENSEE must provide a sketch or diagram for the Rented Facilities at least thirty (30) days prior to the event, to be approved by ASSOCIATION. ASSOCIATION may assist LICENSEE with creating the sketch or diagram, but is not required to do so. Depending on the type of event, the City Fire Marshall may need to approve the layout. A list of vendor names and locations is required two (2) weeks prior to event. Any changes or alterations to the layout MUST be submitted no later than ten (10) business days prior to the first setup day of the event. Any changes or alterations thereafter my result in additional charges, must be signed or otherwise approved by both parties prior to setup and ASSOCIATION cannot guarantee completion. If LICENSEE fails to provide a layout within the specified timeframe, LICENSEE's event may be subject to fines and/or cancellation of event.

12. **HAZARDOUS MATERIALS.** All hazardous materials with potential for explosion, fire, major property damage, physical injury or accident are expressly prohibited on the fairgrounds. These materials include, but are not limited to, explosives, firearms, radioactive materials, or dangerous chemicals. If hazardous materials are utilized in the LICENSE, LICENSEE <u>must</u> obtain clearance from the local Fire Marshall and comply will all written procedures for the safe handling of such materials.

**Ex. A, p. 10** EXHIBIT 1

Vehicles are not permitted inside of buildings without express approval of ASSOCIATION and require strict compliance to additional rules and regulations. Bounce houses are not permitted inside of buildings under any condition.

Washing of any vehicles or items is limited and with ASSOCIATION approval only. Dumping liquids of any kind into storm drains is strictly prohibited.

13. **INSPECTION.** ASSOCIATION shall have the right to audit and monitor any and all sales on the premises. ASSOCIATION shall have the right to enter and inspect the Rented Facilities at any and all times.

14. **LEFT PROPERTY.** ASSOCIATION is not responsible for any property left on the Fairgrounds by LICENSEE, LICENSEE's vendors and/or exhibitors, LICENSEE's guests or the general public. If property is left or not removed by LICENSEE immediately after the end of the LICENSE, ASSOCIATION is hereby authorized and made the agent of LICENSEE to remove and store any and all property and LICENSEE shall reimburse ASSOCIATION for any and all costs or expenses incurred in so doing, including but not limited to reasonable attorney fees. If LICENSEE fails to remove the property or arrange a timely removal within two (2) weeks following the move out date of the event, any and all left property shall be deemed the sole and exclusive property of ASSOCIATION and ASSOCIATION may use, sell, or destroy such items as ASSOCIATION deems appropriate.

15. **MARKING OF BUILDINGS AND AREAS.** Tape, stapling, nails, tacks, or other screws cannot be used on the floors, walls, doors, buildings, asphalt, fencing or trees of any Association property at any time. Use of spray paint of any type on any area is strictly prohibited.

16. **MOTORIZED BIKES AND GOLF CARTS.** Motor-driven vehicles (i.e. mopeds, ATV's, etc.) or bicycles are not permitted on the Fairgrounds. Golf carts are permitted to be driven only between the Rented Facilities and the Administration Office and only by licensed drivers.

17. **NO SMOKING POLICY.** The Alameda County Fairgrounds is a NON-SMOKING facility. Designated smoking areas may be made available for your event, upon request. All designated smoking areas are located under yellow tents. The specific locations of the designated smoking tents will be determined by ASSOCIATION.

18. **NOT PERMITTED.** Dogs, bicycles, skateboards, roller blades, scooters, knives and weapons (all firearms) are prohibited on the Fairgrounds. Dogs are only allowed if they are "Assistance Dogs" or participants in an organized, sanctioned dog event. Cans and glass bottles are prohibited. Any operation or use of unmanned aircraft systems (drones), remote or radio controlled model aircraft in any size, shape, or form, or any other similar type devices is prohibited on the premises of the Alameda County Fairgrounds or within the Alameda County Fairgrounds air rights, without prior written approval.

19. **OVERNIGHT CAMPING/RVS.** ASSOCIATION reserves the right to charge for overnight camping. Overnight camping fees are set at the discretion of ASSOCIATION and can be changed with a thirty (30) day notice to LICENSEE.

RV parking is available in designated areas only. Charges apply for electrical service provided to RVs. All RVs must be self-contained. RV fees are assessed for any RV parked overnight.

20. **PARKING.** Parking inside the fairgrounds is allowed by permit only. A limited number of parking credentials will be provided with the LICENSE. Vehicles parked on grounds without credentials thirty (30) minutes prior to the event time will be subject to tow at the owner's expense. If flat rate parking is included in this LICENSE, reselling of said parking on-site is prohibited. ASSOCIATION reserves the right to charge for parking. Parking fees are set at the discretion of ASSOCIATION and can be changed with a thirty (30) day notice to LICENSEE.

**Ex. A, p. 11** EXHIBIT 1

For Commercial Events, all vendors and event staff will enter through Gate #12 on Valley Avenue on both set-up and event days. The general public will enter through Gate #8 or #12 on Valley Avenue. For Private Events, parking will be at designated lots only. LICENSEE will be responsible for directing guests to designated parking areas.

Vehicles are prohibited from parking in fire lanes and driving on walkways not designated for vehicular traffic. All roadways must remain open at all times.

21. **RELOCATION.** ASSOCIATION, in its sole discretion, may change the location of any event to best utilize the Fairgrounds. ASSOCIATION shall have the right, at any and all times, to change the Rental Facilities specified in the LICENSE to an adequately comparable alternative (1) if the Rental Facilities are deemed, at the discretion of ASSOCIATION, unsuitable, unusable or uninhabitable for LICENSEE's stated Purpose; or (2) due to unforeseen construction and/or renovation issues that occur around or on the Fairgrounds. ASSOCIATION will in good faith explore all possible options to lessen the impact to LICENSEE. If the ASSOCIATION is unable to relocate LICENSEE to an adequately comparable alternative, ASSOCIATION may cancel LICENSEE's event, and LICENSEE's Security Deposit and any and all fees paid by LICENSEE for estimated equipment and labor charges shall be returned to LICENSEE in full within thirty (30) days.

22. **REQUIRED PERMITS & BUSINESS LICENSE.** Event permits are obtained through the Alameda County Fire Department. Tent permits are also obtained through the Alameda County Fire Department and are required for any tent or group of tents that are 400 square feet or larger. Applications can be obtained by calling (510) 670-5853. All Commercial Events must obtain a Business License from the City of Pleasanton, contact (925) 931-5440 for this license. LICENSEE is responsible to obtain Health Permits **prior** to their event for any approved food distribution or sampling. The Health Department phone number is (510) 567-6748.

23. **RESTROOM ATTENDANTS.** Restroom attendants (minimum one female and one male) may be required during event hours for the upkeep of the restrooms, based on the guest count. LICENSEE will be billed at the applicable per hour rate. The number of restroom attendants required will depend on size of event and number of restrooms opened and will be at the discretion of ASSOCIATION based on similarly sized events.

24. **TEMPORARY RESTROOMS.** LICENSEE'S providing temporary restrooms to the public must have at minimum one accessible portable restroom per cluster of restrooms, or 5% in each cluster when more than 20 in a cluster are provided. ASSOCIATION additionally requires LICENSEE to provide directional signage from all entrances of their event to temporary and permanent accessible restrooms.

25. **SAFETY and SECURITY.** ASSOCIATION will determine the necessary minimum security levels based upon the nature of the event and anticipated attendance. All security requirements or additional security needs must use ASSOCIATION's security service, Security Eye Patrol, only. Use of any other security service is not authorized. Scheduling must be done in advance, no later than thirty (30) days prior to event. The rates of ASSOCIATION'S security service, Security Eye Patrol, are subject to change without any prior notice to LICENSEE. ASSOCIATION reserves the right to charge LICENSEE Security Eye Patrol's applicable rates at the time of LICENSEE's event.

Law Enforcement agencies, such as Alameda County Sheriff's Office (ACSO) or any other designated law enforcement agency may be required. Staffing levels are at the discretion of ACSO and/or ASSOCIATION. ASSOCIATION reserves the right to charge LICENSEE Law Enforcement agency's applicable rates at the time of LICENSEE's event.

Emergency medical services may be required, such as Paramedic or EMT services, including transport capability. Staffing levels are at the discretion of ASSOCIATION. ASSOCIATION reserves the right to charge LICENSEE emergency medical services' applicable rates at the time of LICENSEE's event.

LICENSEE's holding events at the Fairgrounds will also be required to comply with the following:

Guest security searches may be required at gate entrances for some events and will include the use of metal

Ex. A, p. 12 EXHIBIT 1

detectors and/or hand-held wands, as well as the inspection of all bags (purses, tote bags, backpacks, diaper bags, insulated food bags, medical supplies, camera bags, binocular cases, empty plastic bottles, etc.)

Prohibited items include: Weapons of any kind including guns, knives, bats, clubs, or any item or sharp object that could be considered or used as a weapon, illegal drugs, narcotics, alcoholic beverages, marijuana or cannabis products of any kind, mace or Pepper Spray, hard shell coolers, ice chests (made of plastic, metal, etc.), cans, glass, flasks, thermoses or any hard-sided containers, tents, tables, large shade umbrellas (small umbrellas or parasols are fine), cooking equipment of any kind, charcoal or flammable liquids, loose food or food contained in large, catering-style pans, trays, bowls, etc., animals (registered service dogs only), scooters, bicycles, skateboards, roller skates, drones, any item deemed by management to be dangerous, inappropriate or disruptive to other guests.

Permissible items per person include: Pre-prepared or packaged food items (sandwiches, salads, etc. (must be contained in a soft insulated or similar-type bag), one soft-sided insulated bag or cooler (16"x16"x8" or smaller only), one diaper bag, one folding chair, one blanket. Cigarette smoking is permitted in designated areas only (yellow smoking tents).

26. **SET-UP/CLEAN-UP.** LICENSEE is responsible for setup and clean-up of their event. LICENSEE will be charged for any set-up or clean up done by ASSOCIATION personnel at the minimum rate of $29 per staff per hour. Any clean up done by ASSOCIATION after final move-out will be billed to LICENSEE.

27. **SIGNS & BANNERS**. Placement of signs/banners on the Fairgrounds may be put up *only* on the event day(s), and only at locations approved by ASSOCIATION prior to the event. **All Event Sponsor signs event must be placed inside of the event and cannot be visible from the street, unless approved in writing by ASSOCIATION.**

Any sign/banner hung, placed, or removed by ASSOCIATION will be charged at the applicable rate for labor and/or equipment. All signs/banners must be removed immediately following the event or LICENSEE will be subject to a $50 fine per sign. ASSOCIATION reserves the right to remove any signage or marketing material that is deemed inappropriate by ASSOCIATION. LICENSEE is prohibited from placing advertising materials on vehicles parked on the Fairgrounds.

**Note**: The City of Pleasanton does not allow signs to be placed on any street, which includes placement on existing signs, trees, medians or curbs. LICENSEE may be subject to a substantial fine by the City if found in violation.

28. **SOUND EQUIPMENT.** ASSOCIATION must approve all sound and P.A. devices, as well as location, in writing, not less than seven (7) days prior to any event. Amplified sound systems may not exceed local or county noise ordinances. Noise standards will be measured at Business Property Line by ASSOCIATION staff. After the first warning by ASSOCIATION that noise levels have exceeded sound limits, LICENSEE may be subject to a minimum fine of $1,000 per warning thereafter. If LICENSEE continues to ignore warnings of ASSOCIATION, it may result in immediate termination of event. Amplified sound is permissible until 9:00PM most days in outdoor spaces and 10:30PM most days inside of buildings.

NOISE STANDARDS
Measured at Business Property Line

**≤ 74 dBA 8:00 am – 9:00 pm**
**≤ 70 dBA 9:00 pm – 8:00 am**

29. **TEMPORARY PHONE SERVICE.** If temporary phone service is request, it must be arranged by LICENSEE through AT&T Temporary Services directly. The number is (800) 339-3204.

Page 5 of 6

**Ex. A, p. 13** EXHIBIT 1

30. **TENTING. The Fair Management must approve all tent locations before tents are erected.** An additional Security Deposit may be required to cover the cost of restoring the tent area to its previous condition. LICENSEE will be required to pay for any and all repairs to restore the tented area and such damages may be deducted from the Security Deposit. Any tents or group of tents that are 400 square feet or larger must be permitted in advance by the Alameda County Fire Marshall. Contact them directly at (510) 618-3490. All tents are required to have fire extinguishers inside. Tent stakes are not permitted; all tents must be secured using weights. Tents and canopies are prohibited inside of <u>any</u> building.

31. **EMERGENCY CONTACT.** In the event of an urgent issue and/or emergency on the Fairgrounds, please contact (925) 931-5100 (Pleasanton Police Department) and report the issue unless otherwise instructed by ASSOCIATION. For situations that do not require law enforcement or medical attention, please contact the Fairgrounds 24 hour security service at: (925) 931-5100 (Stable Gate Security Guard).

32. **EMERGENCY PROCEDURE:** ASSOCIATION requires that all Commercial Event LICENSEES and their agents work with ASSOCIATION to establish a plan to handle emergencies such as accidents, injuries or illnesses during their event.

33. **LOST CHILD PROCEDURE:** ASSOCIATION requires that all Commercial Events have a plan in place to handle lost or missing children during an event. If LICENSEE does not have a plan, ASSOCIATION will work with LICENSEE to develop a plan.

---

### GUIDELINES ACCEPTANCE

RENTAL BOOKINGS ARE RESERVED ONLY UPON RECEIPT OF THE SIGNED LICENSE AGREEMENT, SIGNED GUIDELINES AND RENTAL SECURITY DEPOSIT.

I warrant that I am a duly Authorized Representative of LICENSEE and have full, complete and absolute authority to bind LICENSEE. I have read the contents of the Use Guidelines for Licensing Fairgrounds Facilities and agree to abide by these policies and guidelines. I understand that the penalty for non-compliance of these policies and procedures could result in forfeiture of the Security Deposit, cancellation of the event and/or additional fines depending on the severity of the non-compliance.

*Annette Jackson*
1CAD2244D3DC4C1...

SIGNATURE OF AUTHORIZED REPRESENTATIVE

Annette Jackson                                         9/28/2021

PRINTED NAME                                              DATE

**Ex. A, p. 14** EXHIBIT 1

# Addendum C - Estimate of Costs



California Soulfood Cookout & Festivals
Annette Jackson & Reginald Green
3220 W. Monte Vista Ave. Suite 176
Turlock, CA 95380

Account: 00003719
Amount Due: 57,059.00

---

**California Soulfood Cookout & Festivals (16142)**          Start-End: Sat 09/17/2022 08:00 AM - Sun 09/18/2022 11:59 PM

### Department Summary

| | |
|---|---|
| Event Operations | 4,615.00 |
| Events Department | 37,300.00 |
| Maintenance Department | 600.00 |
| Parking Operations | 544.00 |
| Security Department | 14,000.00 |

| Order | Description | Duration | Tax | Units | Rate | Charges |
|---|---|---|---|---|---|---|
| **Event Operations** | | | | | | |
| Equipment (09/16/2022 08:00 AM - 09/19/2022 11:59 PM) | | | | | | |
| 65108 | Ticket Booth with Safe | | | 2.00 EA | 100.00 / EVT | 200.00 |
| | Tables - Picnic Metal | | | 100.00 EA | 12.00 / EVT | 1,200.00 |
| | Barricades - Metal | | | 27.00 EA | 5.00 / EVT | 135.00 |
| | | | | | **Total For Equipment:** | **1,535.00** |
| Labor (09/16/2022 08:00 AM - 09/19/2022 11:59 PM) | | | | | | |
| 65109 | Event Operation Set-up 09/16/2022 08:00 AM | | | 8.00 HR | 29.00 / EA | 232.00 |
| | Event Operations Staff 09/17/2022 08:00 AM | | | 8.00 HR | 29.00 / EA | 232.00 |
| | Event Operations Staff 09/18/2022 08:00 AM | | | 8.00 HR | 29.00 / EA | 232.00 |
| | Post Event Clean Up 09/19/2022 08:00 AM - 11:59 PM | | | 16.00 HR | 29.00 / EVT | 464.00 |
| | Restroom Attendants 2 Male, 2 Female 09/17/2022 08:00 AM - 11:59 PM | | | 16.00 HR | 60.00 / EVT | 960.00 |
| | Restroom Attendants 2 Male, 2 Female 09/18/2022 08:00 AM - 11:59 PM | | | 16.00 HR | 60.00 / EVT | 960.00 |
| | | | | | **Total For Labor:** | **3,080.00** |
| | | | | | **Total For Event Operations:** | **4,615.00** |
| **Events Department** | | | | | | |
| Space & Charges (09/16/2022 08:00 AM - 09/19/2022 11:59 PM) | | | | | | |
| 64862 | Amphitheater 09/17/2022 08:00 AM - 09/18/2022 11:59 PM | 2.00 Day | | 1.00 EA | 1,950.00 / DAY | 3,900.00 |
| | Front Grounds 09/17/2022 08:00 AM - 09/18/2022 11:59 PM | 2.00 Day | | 1.00 EA | 7,150.00 / DAY | 14,300.00 |

CBL310

# Ex. A, p. 15 EXHIBIT 1

# Addendum C - Estimate of Costs

| California Soulfood Cookout & Festivals (16142) | | | | | | Start-End: Sat 09/17/2022 08:00 AM - Sun 09/18/2022 11:59 PM | |
|---|---|---|---|---|---|---|---|
| Order | Description | Duration | Tax | Units | Rate | | Charges |
| **Events Department (Continued)** | | | | | | | |
| | Front Grounds - Setup/Take Down | 1.00 Day | | 1.00 EA | 3,575.00 / DAY | | 3,575.00 |
| | 09/16/2022 08:00 AM - 11:59 PM | | | | | | |
| | Front Grounds - Setup/Take Down | 1.00 Day | | 1.00 EA | 3,575.00 / DAY | | 3,575.00 |
| | 09/19/2022 08:00 AM - 11:59 PM | | | | | | |
| | Amphitheater - Setup/Take Down | 1.00 Day | | 1.00 EA | 975.00 / DAY | | 975.00 |
| | 09/16/2022 08:00 AM - 11:59 PM | | | | | | |
| | Amphitheater - Setup/Take Down | 1.00 Day | | 1.00 EA | 975.00 / DAY | | 975.00 |
| | 09/19/2022 08:00 AM - 11:59 PM | | | | | | |
| | Front Grounds | 4.00 Day | | 1.00 EA | 2,500.00 / DAY | | 10,000.00 |
| | | | | | **Total For Events Department:** | | **37,300.00** |
| **Maintenance Department** | | | | | | | |
| Equipment (09/16/2022 08:00 AM - 09/19/2022 11:59 PM) | | | | | | | |
| 65108 | Metal Detector Wands | | | 6.00 EA | 20.00 / EVT | | 120.00 |
| | 09/17/2022 08:00 AM - 11:59 PM | | | | | | |
| | Metal Detectors Walk Thru | 1.00 Day | | 6.00 EA | 80.00 / DAY | | 480.00 |
| | 09/17/2022 08:00 AM - 11:59 PM | | | | | | |
| | | | | | **Total For Maintenance Department:** | | **600.00** |
| **Parking Operations** | | | | | | | |
| Labor (09/16/2022 08:00 AM - 09/19/2022 11:59 PM) | | | | | | | |
| 65109 | 2 Ticket Scanners | | | | | | |
| | 2 Ticket Scanners | | | | | | |
| | | | | | **Total For Parking Operations:** | | **544.00** |
| **Security Department** | | | | | | | |
| Security (09/16/2022 08:00 AM - 09/19/2022 11:59 PM) | | | | | | | |
| 65110 | 2 Alameda Sheriffs Saturday | | | 16.00 HR | 150.00 / EVT | | 2,400.00 |
| | 2 Alameda Sheriffs Sunday | | | 16.00 HR | 150.00 / EVT | | 2,400.00 |
| | 18 Security Rovers Saturday | | | 144.00 HR | 28.00 / EVT | | 4,032.00 |
| | 09/17/2022 08:00 AM - 11:59 PM | | | | | | |
| | 18 Security Rovers Sunday | | | 144.00 HR | 28.00 / EVT | | 4,032.00 |
| | 09/18/2022 08:00 AM - 11:59 PM | | | | | | |
| | Security Supervisor Saturday | | | 8.00 HR | 42.00 / EVT | | 336.00 |
| | 09/17/2022 08:00 AM - 11:59 PM | | | | | | |
| | Security Supervisor Sunday | | | 8.00 HR | 42.00 / EVT | | 336.00 |
| | 09/18/2022 08:00 AM - 11:59 PM | | | | | | |
| | Security Dispatcher Saturday | | | 8.00 HR | 29.00 / EVT | | 232.00 |
| | 09/17/2022 08:00 AM - 11:59 PM | | | | | | |
| | Security Dispatcher Sunday | | | 8.00 HR | 29.00 / EVT | | 232.00 |
| | 09/18/2022 08:00 AM - 11:59 PM | | | | | | |
| | | | | | **Total For Security Department:** | | **14,000.00** |
| | | | | | **Total Services:** | | **57,059.00** |

| **Invoice Summary** | | |
|---|---|---|
| | **Total Services:** | 57,059.00 |
| | **Total Taxes:** | 0.00 |
| | **Total Charges:** | 57,059.00 |
| | **Total Payments:** | 0.00 |
| | **Total Amount Due:** | 57,059.00 |

**Ex. A, p. 16** EXHIBIT 1

# Addendum C - Estimate of Costs

**California Soulfood Cookout & Festivals (16142)**
Please reply to: Alameda County Fair Association
4501 Pleasanton Avenue
Pleasanton CA 94566
Phone: 925-426-7600
Fax: 925-426-7599

Start-End: Sat 09/17/2022 08:00 AM - Sun 09/18/2022 11:59 PM

CBL310

Page 3 of 3

**Ex. A, p. 17** EXHIBIT 1

# AREA MAP



**Addendum D**

**Map Showing Rented Area— Front Grounds & Amphitheater**



| SHEET | REVISIONS | BY | DATE: | DRAWN BY: | SCALE: 1" = 150' | FULL PROPERTY | |
|---|---|---|---|---|---|---|---|
| A.0 | | | 7/28/16 | KATE CASON | | | |
| FILENAME: ALL GROUNDS.DWG | | | | | SIZE ARCH D | | |

**Ex. A, p. 18** EXHIBIT 1

# EXHIBIT B

EXHIBIT 1

DocuSign Envelope ID: 6A71CA8D-CB12-4235-AEB4-6EF329FAA00C



**Letter of Understanding**
**Multi-year contract after first event contingencies**

**California Soul Food Cookout and Festival Inc.**
**Annette Jackson**
This Letter of Understanding to the LICENSE, is by and between the Alameda County Agricultural Fair Association, hereafter ASSOCIATION, and California Soul Food Cookout and Festival Inc. hereafter LICENSEE, represented herein by Annette Jackson, a duly Authorized Representative.

The ASSOCIATION agrees to extend a multiyear LICENSE to LICENSEE following **The California Soul Food Cookout and Festival** as long as the LICENSEE abides by the rules and regulations set forth in the AGREEMENT #21-IE-96 by the ASSOCIATION and the contingencies below are met.

Multi-year LICENSE contingent on the following for The 2022 California Soul Food Cookout and Festival:
-LICENSEE pays ASSOCIATION rent by July 16th 2022
-LICENSEE pays ASSOCIATION Estimate of Costs by August 19th 2022
-LICENSEE adheres to Spectra's contract and all scheduled deadlines for payments and counts
-LICENSEE provides the Event Coordinator the event layout by August 12th 2022
-LICENSEE pays in a timely manner for unexpected charges that arise but are requested in writing from LICENSEE
-LICENSEE works respectively with the Alameda County Agricultural Fair Association staff, Spectra, and all other ASSOCIATION partners

Multi-Year LICENSE Dates:

**2023**: Set-up **9/22/2023**  Event **9/23-9/24/2023** Take-down **9/25/2023**

**2024**: Set-up **9/13/2024** Event **9/14-15/2024** Take-down **9/16/2024**

**2025**: Set-up **9/12/2025** Event **9/13-14/2025** Take-down **9/15/2025**

**2026**: Set-up **9/18/2026** Event **9/19-20/2026** Take-down **9/21/2026**

Multi-Year LICENSE to be completed, signed and Security Deposit paid by LICENSEE, no less than 45 days post 2022 event: November 2nd 2022.

ASSOCIATION agrees to work in good faith with LICENSEE to execute a successful event in 2022 so that a Multi-year LICENSE may be extended after the 2022 Event.

IN WITNESS WHEREOF, This Letter of Understanding has been executed, by and on behalf of the parties hereto, the day and year first above written.

| | | |
|---|---|---|
| **Annette Jackson** | *Annette Jackson* (DocuSigned by) 1CAD2244D3DC4C1 | 4/9/2022 |
| SIGNATURE OF AUTHORIZED REPRESENTATIVE | | DATE |
| | *Melissa Glickman* (DocuSigned by) 3440A6F3D7S14CF | 4/11/2022 |
| MELISSA GLICKMAN, EVENT SALES AND COORDINATION MANAGER ALAMEDA COUNTY AGRICULTURAL FAIR ASSOCIATION | | DATE |

## Ex. B, p. 1   EXHIBIT 1

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br><br>1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>05/26/2023<br>Chad Flnke, Execitue Officer/Clerk of the Court<br>By. _____ Deputy<br>S. Ashby-Anderson |
| PLAINTIFF(S):<br>California Soul Food Cookout and Festival Inc., a California corporatio | |
| DEFENDANT(S):<br>Alameda County Agricultural Fair Association, a California non-profit c | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>23CV034510 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE:   Frank Roesch
DEPARTMENT:         17
LOCATION:              Rene C. Davidson Courthouse
                              1221 Oak Street, Oakland, CA 94612
PHONE NUMBER:    (510) 267-6933
FAX NUMBER:
EMAIL ADDRESS:   Dept17@alameda.courts.ca.gov

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate).  Parties may arrange and pay for the attendance of a certified shorthand reporter.  In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available.  For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing.  Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

ACSC (Rev. 10/21)

EXHIBIT 1

**ASSIGNED FOR ALL PURPOSES TO**
JUDGE Frank Roesch
DEPARTMENT 17

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days." The court's website contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.


Chad Finke, Executive Officer / Clerk of the Court


By

S. Ashby-Anderson, Deputy Clerk

EXHIBIT 1

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>05/26/2023<br>Clad Flake, Executive Officer/Clerk of the Court |
| PLAINTIFF:<br>California Soul Food Cookout and Festival Inc., a California corpor; | By: _____ Deputy |
| DEFENDANT:<br>Alameda County Agricultural Fair Association, a California non-pro' | S. Ashby-Anderson |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>23CV034510 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

Date: 10/13/2023    Time: 9:00 AM    Dept.: 17

Location: Rene C. Davidson Courthouse
1221 Oak Street, Oakland, CA 94612

TO  DEFENDANT(S)/ATTORNEY(S)  FOR  DEFENDANT(S)  OF  RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

EXHIBIT 1

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>05/26/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _____ Deputy<br>S. Ashby-Anderson |
| PLAINTIFF/PETITIONER:<br>California Soul Food Cookout and Festival Inc., a California corporation | |
| DEFENDANT/RESPONDENT:<br>Alameda County Agricultural Fair Association, a California non-profit corporation et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23CV034510 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Sean Lowe
Flowe Legal, P.C.
5317 S Mullen Ave
View Park, CA 90043

Chad Finke, Executive Officer / Clerk of the Court

Dated: 05/31/2023                    By:

S. Ashby-Anderson, Deputy Clerk

CERTIFICATE OF MAILING EXHIBIT 1